**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **WILBUR SMITH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 12-0501-WS-B** |
| | ) | |
| **SEAPORT MARINE, INC., *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

This matter comes before the Court on Seaport Marine, Inc.'s Motion to Dismiss (doc. 11) and Odyssea Marine Inc.'s Motion to Dismiss (doc. 14).[1] Both Motions have been briefed and are now ripe.

---

[1] Also pending are plaintiff's Motion for Leave to File First Amended Complaint (doc. 21) and Motion for Leave to File Supplemental Brief (doc. 25). The Motion requesting leave to amend the Complaint neither identifies any specific amendment that plaintiff wishes to make nor appends a proposed amended pleading for the Court to review under Rule 15(a)(2). Rather, this Motion is a mere placeholder, stating that "If the Court finds that Plaintiff has failed to state a claim in any particular, Plaintiff requests leave to file a First Amended Complaint curing the deficiency, unless same would be futile." (Doc. 21, ¶ 2.) Because this vague Motion effectively requests an advisory opinion as the propriety of an amendment that has never been crafted or presented, and lacks the necessary specificity to enable the Court to ascertain whether any such amendment would be permissible pursuant to Rule 15(a)(2), Fed.R.Civ.P., the Motion for Leave to File First Amended Complaint is **denied**, without prejudice to plaintiff's ability to file a properly supported Rule 15(a)(2) motion prior to the applicable scheduling order deadline. As for plaintiff's Motion for Leave to File Supplemental Brief (doc. 25), that Motion is likewise **denied**. Plaintiff has failed to attach a proposed supplemental brief to his Motion; therefore, granting such a motion would likely delay adjudication of the Rule 12(b) motions for a period of weeks while he drafts such a brief. Moreover, the proposed supplementation relates exclusively to this Court's recent ruling in *Jurich v. Compass Marine, Inc.*, --- F. Supp.2d ----, 2012 WL 5400046 (S.D. Ala. Nov. 2, 2012). Having authored the *Jurich* opinion, the undersigned does not require supplemental briefing as to what it says, what it means, or how (if at all) it applies here.

## I. Relevant Background.

Plaintiff, Wilbur Smith, for himself and on behalf of others similarly situated, filed a multi-count Complaint (doc. 1) against defendants, Seaport Marine, Inc. and Odyssea Marine, Inc. According to the well-pleaded allegations of the Complaint, Smith is a seaman who entered into an Employment Placement Contract with defendant Seaport, pursuant to which Seaport provided employment placement services for Smith (*i.e.*, it helped him find a job) in exchange for Smith authorizing Seaport to collect a recruitment fee and to recoup advances out of his resulting wages. (Doc. 1, ¶ 4, 6.) To facilitate that arrangement, Smith executed a Paycheck Mailing Agreement authorizing his employer to mail his payroll checks to Seaport until Seaport's "fee and advances were collected in installments," as well as a Special Power of Attorney authorizing Seaport to endorse and deposit those checks, collect an allotment from them, and mail the balance to Smith. (*Id.*, ¶ 6.) Although the allegations of the Complaint center on defendant Seaport, they also relate to defendant Odyssea. Smith maintains that he was employed by Odyssea, that Odyssea was complicit in implementing the terms of the Paycheck Mailing Agreement, and that the result was an unlawful allotment of $3,640 from his wages. (*Id.*, ¶ 14.)

Notably, the Complaint does not identify what contacts (if any) Odyssea has with the forum state in which this litigation was filed, or with the United States as a whole. Nor does the Complaint identify any nexus between Smith and the Southern District of Alabama, much less any explanation or allegation concerning venue, aside from the barest, most conclusory of statements that "Defendants [are] subject to service of process within this forum, *vis-à-vis* the purported contracting of business." (*Id.*, ¶ 2.) Careful review of the Complaint in its entirety reveals no clues as to why Smith filed suit here, as opposed to some other forum having an articulable nexus to the parties and/or the dispute.[2]

Based on the limited factual allegations embedded in his cumbersome (and sometimes opaque) Complaint, Smith purports to bring claims against both Seaport and Odyssea for (i)

---

[2] For example, we do not know (and cannot surmise) from the Complaint whether Smith is a citizen of Alabama or some other state, whether Seaport and Odyssea conduct or have ever conducted operations in this judicial district, and so on. Nonetheless, neither defendant has filed a Rule 12(b)(3) motion to dismiss this action for improper venue, much less any motion to transfer venue pursuant to 28 U.S.C. §§ 1404(a) or 1406(a).

"seaman's claim for wages" (on the theory that the wage assignments were non-binding, such that Smith is entitled to the balance of his wages allotted, forwarded to and retained by Seaport); (ii) conversion; (iii) conspiracy; (iv) equitable rescission of contract and restitution for money had and received; (v) legal restitution / breach of contract; (vi) breach of fiduciary duty; and (vii) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Of these claims, Smith aims the equitable rescission, legal restitution/breach of contract, and breach of fiduciary claims solely at Seaport; however, the remaining claims (seaman's claim for wages, conversion, conspiracy and RICO) are brought against both defendants.

Seaport and Odyssey have independently filed overlapping Rule 12(b)(6) Motions to dismiss the Complaint for failure to state a claim, with Odyssey also advancing arguments under Rule 12(b)(2) to dismiss the Complaint for want of personal jurisdiction.

**II. Analysis.**

***A. Personal Jurisdiction as to Defendant Odyssea.***

In its Motion to Dismiss, Odyssea argues in general terms that the Complaint is insufficient to demonstrate that this Court has personal jurisdiction over it. Rather than affirmatively showing pertinent jurisdictional facts or circumstances, Odyssea is content to point out that "[n]o facts whatsoever are pled regarding the location where Smith purportedly was employed by Odyssea" and that "[n]o facts whatsoever are pled pertaining to Odyssea's contacts with the instant forum." (Doc. 14, at 5.) Because Odyssea is challenging the existence of personal jurisdiction, the Court will address this Rule 12(b)(2) component of its Motion to Dismiss before reaching the merits issues detailed in the Rule 12(b)(6) portion of the Motion. *See, e.g., Koch v. Royal Wine Merchants, Ltd.*, 847 F. Supp.2d 1370, 1374 (S.D. Fla. 2012) ("The general rule is that courts should address issues relating to personal jurisdiction before reaching the merits of a plaintiff's claims.") (citation and internal quotation marks omitted); *Daily Access Corp. v. Gaedeke Holdings, Ltd.*, 2012 WL 6728051, *2 (S.D. Ala. Dec. 7, 2012) (similar); *Malibu Media, LLC v. John Does 1-25*, 2012 WL 3940142 (M.D. Fla. Aug. 21, 2012) (similar).

As articulated in its Motion, Odyssea's Rule 12(b)(2) argument is firmly rooted in a traditional Fourteenth Amendment personal jurisdiction analysis, which first looks to whether the forum state's long-arm statute provides jurisdiction over a nonresident defendant and, if so, then "requires that the defendant have minimum contacts with the forum state and that the exercise of

jurisdiction not offend traditional notions of fair play and substantial justice." *Sloss Industries Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007) (citations and internal quotation marks omitted). In response, Smith correctly points out that the typical Fourteenth Amendment framework gives way where, as here, the plaintiff brings a claim under a federal statute with a nationwide service of process clause. *See Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997) ("When a federal statute provides for nationwide service of process, it becomes the statutory basis for personal jurisdiction."). As noted, Smith has asserted a RICO claim against both defendants. RICO has a nationwide service of process provision. *See* 18 U.S.C. § 1965(d) ("All other process in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs."). "[I]t is well established that when, as here, a federal statute provides the basis for jurisdiction, the constitutional limits of due process derive from the Fifth, rather than the Fourteenth, Amendment." *Republic of Panama*, 119 F.3d at 942; *Grail Semiconductor, Inc. v. Stern*, 2012 WL 5903817, *3 (S.D. Fla. Nov. 26, 2012) ("[i]n this analysis, the Fifth Amendment's Due Process Clause serves as the constitutional touchstone" because a federal statute provides the jurisdictional basis). Accordingly, the constitutional prong of Odyssea's Rule 12(b)(2) objection is governed by the Fifth Amendment's due process clause, not that of the Fourteenth Amendment.[3]

[3] In its reply brief, Odyssea argues in passing that the due process analysis in this case should proceed under the Fourteenth Amendment because "Odyssea contends Smith has failed to state a civil RICO claim and that claim is due to be dismissed." (Doc. 24, at 2 n.2.) This contention ignores appellate guidance drawing a "distinction between what a plaintiff asserting jurisdiction under a federal statute must allege to survive a defendant's … 12(b)(2) motion on the one hand, and a defendant's 12(b)(6) motion on the other." *Republic of Panama*, 119 F.3d at 941. While showing that the statutory claim fails to state a claim on which relief can be granted suffices to warrant a Rule 12(b)(6) dismissal, the Rule 12(b)(2) standard is much more stringent from a movant's perspective. "[I]nsofar as an asserted claim is not wholly immaterial or insubstantial, a plaintiff is entitled to take advantage of the federal statute's nationwide service of process provision." *Republic of Panama*, 119 F.3d at 942; *see also Rogers v. Nacchio*, 2007 WL 2002594, *1 n.1 (11th Cir. July 12, 2007) (plaintiff is precluded from availing himself of nationwide personal jurisdiction under federal statutory claim only if such claim is "insubstantial, implausible, or otherwise completely devoid of merit") (citation omitted). Here, Odyssea has argued only that the RICO claim fails to state a claim upon which relief can be granted. It has not attempted to meet the higher threshold of showing that this claim is "wholly immaterial or insubstantial" for Rule 12(b)(2) purposes. In light of this circumstance, (Continued)

In performing a Fifth Amendment due process inquiry, courts "should balance the burdens imposed on the individual defendant against the federal interest involved in the litigation." *Republic of Panama*, 119 F.3d at 946. The Eleventh Circuit cautions, however, "that courts must engage in this balancing ***only*** if a defendant has established that his liberty interests actually have been infringed. … Only when a defendant challenging jurisdiction has presented a compelling case that would render jurisdiction unreasonable … should courts weigh the federal interests favoring the exercise of jurisdiction." *Id.* (citation and internal marks omitted). Once the plaintiff shows that a defendant objecting to personal jurisdiction has "sufficient contacts with the United States as a whole," that defendant bears the "burden of establishing constitutionally significant inconvenience," which will be found only in "rare" and "highly unusual cases." *Id.* at 946-47. "The burden is on the defendant to demonstrate that the assertion of jurisdiction in the forum will make litigation so gravely difficult and inconvenient that he unfairly is at a severe disadvantage in comparison to his opponent." *Id.* at 948 (citation and internal quotation marks omitted).

Odyssea has not come close to satisfying this daunting burden.[4] At best, Odyssea complains in conclusory, non-specific terms in its reply brief (unsupported by affidavit, declaration or any other form of evidentiary showing) that it lacks contacts with Alabama and

---

the Court finds that Smith is entitled to rely on RICO's nationwide service of process provision, and that the Fifth Amendment / nationwide service of process framework governs the Rule 12(b)(2) analysis herein, even if that RICO claim is ultimately found not to state an actionable claim for purposes of a Rule 12(b)(6) analysis.

[4] Of course, the initial burden rests with Smith to show that Odyssea has sufficient aggregate contacts with the United States as a whole (not the forum state) to satisfy a "minimum contacts" analysis. *See Republic of Panama*, 119 F.3d at 946 n.21 ("minimum contacts with the United States – the relevant sovereign – satisfy the 'purposeful availment' prong in federal question cases"). After all, Smith "has the burden of establishing a *prima facie* case of personal jurisdiction." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006); *see also PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 810 (11th Cir. 2010) (similar). Here, however, there is no argument or whisper of a suggestion by Odyssea that it lacks minimum contacts with the United States as a whole. To the contrary, Odyssea readily admits that it "is a Louisiana corporation." (Doc. 24, at 2.) Because it is undisputed that Odyssea's contacts with the United States as a whole are sufficient to satisfy the "purposeful availment" prong in this RICO case, the Court need not be detained by the requirement that plaintiff demonstrate defendant's minimum contacts with the U.S.

that Louisiana (where Odyssea would prefer to defend this litigation) would be a more convenient forum. (Doc. 24, at 6.) As *Republic of Panama* teaches, however, "a defendant's contacts with the forum state play no magical role in the Fifth Amendment analysis" because "state lines cannot provide an accurate measure of the burdens that would be imposed on a defendant by requiring him to defend an action in a particular forum." 119 F.3d at 946. Odyssea has presented literally nothing to show that defending its interests in this forum (as opposed to one a couple hundred miles away in Louisiana) would make litigation so gravely difficult and inconvenient that Odyssea would be placed at a severe disadvantage relative to Smith. Accordingly, this is not one of the "rare" or "highly unusual" cases where the inconvenience to Odyssea of defending itself in this forum would give rise to a cognizable Fifth Amendment due process concern.

Simply put, Odyssea has "presented no evidence that [its] ability to defend this lawsuit will be compromised significantly if [it is] required to litigate in" the Southern District of Alabama. *Republic of Panama*, 119 F.3d at 948; *see also Grail Semiconductor*, 2012 WL 5903817, at *5 (defendant's conclusory statements that it would be "extremely difficult" for him to litigate a case in Florida because he lives in California fail to meet burden because "they do not furnish the Court with anything substantive that would show why or how the burden on Stern would be of constitutional concern"); *NCI Group, Inc. v. Cannon Services, Inc.*, 2009 WL 2411145, *6 (N.D. Ga. Aug. 4, 2009) (rejecting Rule 12(b)(2) motion where defendants merely argued that their ties were with Mississippi, not Georgia, without showing "that it would be 'difficult' or 'inconvenient' for them to adjudicate the case in this court"). Asserting jurisdiction over Odyssea would not offend constitutional notions of fair play and substantial justice; therefore, Odyssea's Rule 12(b)(2) Motion to dismiss the Complaint for lack of personal jurisdiction is **denied**.

***B. Legal Standard for Rule 12(b)(6) Motions.***

Both defendants move for dismissal of the Complaint for failure to state a claim upon which relief can be granted. To withstand Rule 12(b)(6) scrutiny, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face," so as to "nudge[ ] their claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation omitted). "This necessarily requires that a plaintiff include factual allegations for each essential element of his or her claim." *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012). Thus, minimum pleading standards "require[ ] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. As the Eleventh Circuit has explained, *Twombly/Iqbal* principles require that a complaint's allegations be "enough to raise a right to relief above the speculative level." *Speaker v. U.S. Dep't of Health and Human Services Centers for Disease Control and Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010) (citations omitted). "[I]f allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *see also Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011) ("Legal conclusions without adequate factual support are entitled to no assumption of truth.").

***C. Seaman's Claim for Wages (Count I).***

Count I of Smith's Complaint, framed as a "Seaman's Claim for Wages," includes the following salient allegations: (i) Smith's assignment of wages before paid in favor of Seaport is non-binding pursuant to 46 U.S.C. § 11109(b); (ii) Odyssea's collection and forwarding of Smith's payroll checks to Seaport in reliance on that non-binding assignment was wrongful and unlawful; and (iii) Smith is entitled to recover from Seaport and Odyssea the entire balance of his wages allotted, forwarded to, and retained by Seaport. In filings that overlap in some respects and diverge in others, both defendants seek dismissal of this claim under Rule 12(b)(6).

***1. Seaport's Arguments for Dismissal of Count I.***

According to Seaport, Count I should be dismissed because "Plaintiff has not and cannot allege facts to prove a violation of 46 U.S.C. § 11109." (Doc. 11-1, at 5.) Seaport contends that § 11109 applies only to persons employed "on a fishing vessel or any fish processing vessel." By Seaport's reckoning, Count I does not properly invoke § 11109 as a basis for relief because Smith "has failed to allege that he was seaman on a fishing or fish processing vessel, nor can he truthfully allege that he worked aboard a fishing or fish processing vessel." (*Id.* at 5-6.)

Seaport's position misconstrues and inaccurately circumscribes the scope of § 11109. That section has three subsections. Subsection (a) greatly limits circumstances under which "[w]ages due or accruing to a master or seaman" may be attached or arrested. Subsection (b)

provides, in full, that "[a]n assignment or sale of wages or salvage made before the payment of wages does not bind the party making it, except allotments authorized by section 10315 of this title." 46 U.S.C. § 11109(b). And subsection (c) reads as follows: "This section applies to an individual employed on a fishing vessel or any fish processing vessel." 46 U.S.C. § 11109(c). Seizing on the text of subsection (c) in isolation, Seaport insists that it recites the universe of persons to whom § 11109 may apply. There are many flaws with this contention. First, Seaport's reading would improperly inject implied limiting language of "only" or "exclusively" into subsection (c) where no such terms exist.[5] Second, Seaport's interpretation would needlessly create a contradiction between subsection (c) (which Seaport reads as providing that § 11109 applies only to persons employed on fishing vessels) and subsection (a) (which provides on its face that it applies to any "master or seaman," without regard to the type of vessel).[6] Third, even if § 11109 were ambiguous as to its breadth (which the Court finds not to be the case), the legislative history obliterates all doubt in confirming that the section was intended to reach both seamen and employees of fishing vessels. The "Revision Notes and Legislative Reports" accompanying § 11109 confirm that "Section 11109 limits the attachment of a seaman's wages and ***establishes certain rules for the assignment of a seaman's wages. It also applies to fishermen on fishing vessels***." *Id.* (emphasis added).[7] And fourth, the Supreme Court

5 *See, e.g., United States v. Crape*, 603 F.3d 1237 (11th Cir. 2010) (courts "will not attribute words to Congress that it has not written") (citation omitted); *Friends of Everglades v. South Florida Water Management Dist.*, 570 F.3d 1210, 1224 (11th Cir. 2009) ("we are not allowed to add or subtract words from a statute; we cannot rewrite it").

6 *See, e.g., Louisiana Public Service Com'n v. F.C.C.*, 476 U.S. 355, 370, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986) ("we are guided by the familiar rule of construction that, where possible, provisions of a statute should be read so as not to create a conflict"); *Poveda v. U.S. Atty. Gen.*, 692 F.3d 1168, 1179 (11th Cir. 2012) ("in construing a statute, we do not look at one word or term in isolation, but instead we look to the entire statutory context") (citation omitted); *Polycarpe v. E&S Landscaping Service, Inc.*, 616 F.3d 1217, 1223 (11th Cir. 2010) ("it is our obligation to give meaning to all of the statutory language that Congress enacted").

7 *See, e.g., United States v. Zuniga-Arteaga*, 681 F.3d 1220, 1223 (11th Cir. 2012) (where statutory language is ambiguous, "we look to the legislative history for additional guidance as to Congress's intent"); *United States v. Pringle*, 350 F.3d 1172, 1180 n.11 (11th Cir. 2003) ("When a statute is vague or ambiguous, other interpretative tools may be used, including an examination of the act's purpose and of its legislative history.").

interpreted the substantively similar predecessor statute to § 11109 as applying both to fishermen and to seamen, rather than merely to one or the other. *See Blackton v. Gordon*, 303 U.S. 91, 93, 58 S.Ct. 417, 82 L.Ed. 683 (1938) (explaining that 46 U.S.C. § 601, enacted in 1915, added "a provision to make it applicable to fishermen employed on fishing vessels as well as to seamen"). In light of these compelling arguments, considered individually and collectively, the Court rejects Seaport's legally unfounded contention that § 11109 is confined to the context of a fishing vessel or fish processing vessel, but instead finds it applicable to all seamen, as that term is defined at 46 U.S.C. § 10101(3).[8]

Next, Seaport maintains that even if § 11109(b) applies here, that section does nothing more than render the assignment non-binding. In that regard, Seaport reasons that "[t]he statute does not transform an assignment into an unlawful or unauthorized allotment and violation of that statute would not rise to the level of unlawful conduct." (Doc. 11-1, at 6.) Defendant is correct that, on its face, § 11109(b) provides only that an assignment such as Smith's is not binding on him, not that it is unlawful. Insofar as Seaport seeks dismissal of Count I on this basis, however, its argument falls short. Seaport eschews any cases or other authorities that construe this statute or discuss principles generally applicable to seamen's wages and statutes protecting them.[9] More importantly, Seaport does not explain (by reference to any legal

---

8 In so doing, the Court recognizes that Seaport relies on an unpublished 2006 opinion from another jurisdiction, styled *Mitchell v. Metco, Inc.*, 2006 WL 6549488 (S.D. Tex. Nov. 1, 2006), to support its § 11109 interpretation. While the *Mitchell* court declared in summary fashion that § 11109 "applies only to individuals employed on a fishing vessel or fish processing vessel," 2006 WL 6549488, at *2, it supplied no reasoning or explanation for that conclusion. *Mitchell* certainly did not address or rebut any of the persuasive considerations identified *supra*, all of which counsel in favor of a contrary result. What's more, *Mitchell* has apparently never been cited by any opinion (published or unpublished, in any jurisdiction), treatise or scholarly article in the six-plus years since it was decided. For these reasons, the Court will not blindly follow *Mitchell*, as defendant advocates.

9 In its reply, Seaport attempts to flip the burden to Smith, arguing that "Plaintiff has cited no case law for his assertion that § 11109(b) transforms an assignment or sale of wages before earned into an unlawful or unauthorized allotment. Nor has he cited case law for his assertion that enter into a non-binding assignment rises to the level of illegal or unlawful conduct." (Doc. 23, at 2.) As movant, Seaport (not Smith) bears the initial burden of showing why Smith's claims do not state an actionable claim. *See, e.g., Superior Energy Services, LLC v. Boconco, Inc.*, 2010 WL 1267173, *5 (S.D. Ala. Mar. 29, 2010) ("When attacking a complaint in a motion filed pursuant to Rule 12(b)(6), the moving party bears the burden to show that the (Continued)

authorities or principles of maritime law) why violation of § 11109(b) cannot support a general maritime law claim for seaman's wages, but instead trades solely in abstractions of "unlawful conduct." There is support in the case law for utilizing § 11109(b) in furtherance of a general maritime law claim for wages, just as Smith does. *See Jurich v. Compass Marine, Inc.*, --- F. Supp.2d ----, 2012 WL 5400046, *3 (S.D. Ala. Nov. 2, 2012) (rejecting similar argument and citing Supreme Court opinion showing that substantively similar predecessor statute to § 11109 "prevents the assignment or sale of a seaman's wages," that such statute is "to be liberally interpreted with a view to effecting the protection intended to be extended to" seamen, and that such statute "would be construed to include postjudgment proceedings in aid of execution"). Besides, Seaport's argument addresses the wrong question. Smith has not asserted a statutory claim against defendants under § 11109(b).[10] Rather, he has brought a general maritime law claim for wages. The relevant issue is not whether a non-binding allotment under § 11109(b) is "unlawful" in some technical sense, but whether it can be used as a legal basis for general maritime law wage claims (as well as the other state-law claims asserted in the Complaint). Seaport has provided no convincing, legally supported explanation for why it could not, and has not connected its semantics-driven "unlawful" argument to a concrete analysis of any claim or causes of action propounded in the Complaint.

---

complaint should be dismissed for failure to state a claim upon which relief may be granted."); *Gulf Offshore Logistics, LLC v. Bender*, 2010 WL 500448, *2 (S.D. Ala. Feb. 9, 2010) ("Because the defendant presented a Rule 12(b)(6) motion …, he at all times bore the burden of demonstrating entitlement to dismissal."). Simply put, it is not Smith's obligation at the Rule 12(b)(6) stage to prove that he is entitled to recover wages obtained by Seaport pursuant to a non-binding assignment; rather, it is Seaport's burden to demonstrate that he is <u>not</u>. Merely providing defendant's *ipse dixit* and blaming plaintiff for failing to cite contrary case law is not enough.

[10] This fact is visible in the Complaint itself, and is reinforced by Smith's statement in briefing the Rule 12(b)(6) Motions that he is not "attempting to allege a cause of action based on 46 USC §11109. Count I is brought under the auspices of a seaman's general maritime law claim for wages." (Doc. 22, at 3.)

Seaport's final argument for dismissal of Count I is that "Plaintiff has not and cannot truthfully allege facts that prove a violation of 46 U.S.C. § 10315(c)." (doc. 11-1, at 6.)[11] In this regard, Seaport reasons that this section is found in Chapter 103, whose application is limited to United States vessels that are either (i) on a voyage between a United States port and a foreign port, or (ii) on a voyage between a U.S. port on the Atlantic Ocean and a U.S. port on the Pacific Ocean. *See* 46 U.S.C. § 10301(a)(1)-(2). Those circumstances are not alleged to be present here, so Seaport is correct that § 10315(c) cannot apply. Once again, however, Seaport appears engaged in an exercise of erecting strawmen only to tear them down. The Complaint does not allege a cause of action for violation of § 10315(c). Neither Count I nor any other claim set forth in the Complaint is presented as a statutory claim for violation of § 10315(c). As such, whether § 10315(c) would have afforded Smith a basis for relief against Seaport had Smith sought to pursue a claim under that section is of little consequence.[12]

---

[11] That section reads as follows: "Only an allotment complying with this section is lawful. A person falsely claiming qualification as an allottee under this section is liable to the United States Government for a civil penalty of not more than $500." 46 U.S.C. § 10315(c).

[12] That said, Seaport's confusion on this point is understandable, given the Complaint's generous sprinkling of puzzling allegations that "Plaintiffs' wages collected by Seaport Marine are not allotments authorized by 46 USCA 10315, and are, thus, unauthorized and unlawful" (doc. 1, ¶ 9) and that Seaport's exercise of the assignment is "unauthorized and unlawful per 46 USC 10315(c)" (*id.*, ¶ 62). Also, Smith muddies the waters in his response brief by insisting that he "Has Alleged Facts That Prove A Violation [*sic*] 46 USC §10315(c)" (doc. 13, at 4), even though the Complaint does not interpose a direct claim for violation of § 10315(c). To foreclose any further time-consuming, unproductive frolic and detour down this particular rabbit trail as this litigation moves forward, the Court clarifies that any claim for relief Smith might be pursuing under § 10315(c) is not cognizable as a matter of law. The subject allotments are not unlawful under § 10315(c) because that section has no bearing on these facts and circumstances. As noted, § 10315(c) is found in Chapter 103, whose application is confined to a particular subset of vessels that Smith has not alleged to exist here. To be sure, § 11109 (which, as discussed *supra*, does apply in this case) states that "[a]n assignment or sale of wages or salvage made before the payment of wages does not bind the party making it, except allotments authorized by section 10315 of this title." 46 U.S.C. § 11109(b). Contrary to plaintiff's suggestion, however, the statutory reference to § 10315 does not cause that section to transcend Chapter 103 in the sense of making the "lawful" provision in § 10315(c) applicable outside the Chapter 103 context. Section 11109(b)'s reference to § 10315 merely identifies the categories of assignments of wages made before payment of wages that are binding (to-wit, those specified in § 10315). Nothing more of § 10315 was incorporated into § 11109, and certainly the latter section was not a wholesale incorporation by reference of § 10315 in its entirety. Stated differently, § 11109 did not lift the § 10315 penalty provisions concerning unlawful allotments (Continued)

***2. Odyssea's Arguments for Dismissal of Count I.***

In its separate Rule 12(b)(6) Motion, Odyssea raises various arguments of its own that Smith's seaman claim for wages must fail. Certain of these contentions are redundant of those identified by Seaport. For example, Odyssea argues that Smith cannot bring a statutory claim under § 11109(b), that § 11109 applies only to persons employed on fishing vessels or fish processing vessels, and that Smith cannot prove a violation § 10315. These arguments have been explored at length *supra*, and no constructive purpose would be served by revisiting them.

That said, Odyssea raises two unique arguments for dismissal of Count I. First, Odyssea contends that § 11109 is unavailable to plaintiff because "Smith has failed to plead sufficient facts to bring him within the definition of a 'seaman'" for purposes of a *Twombly / Iqbal* analysis. (Doc. 14, at 6.) The Court disagrees. The applicable statutory definition provides that "seaman" means "an individual (except scientific personnel, a sailing school instructor, or a sailing school student) ***engaged or employed in any capacity on board a vessel***." 46 U.S.C. § 10101(3) (emphasis added).[13] The well-pleaded allegations of the Complaint identify Smith as a seaman (doc. 1, ¶ 4) who earned wages serving as a crew member aboard an Odyssea vessel (*id.*, ¶ 16). Matching these (admittedly limited) factual allegations to the statutory definition, the

---

out of the Chapter 103 context to which § 10315 is expressly limited. *See Jurich*, 2012 WL 5400046, at *3 ("Section 11109(b) does reference Section 10315, but only to identify allotments that are binding under Section 11109(b), not to incorporate its 'unlawful' language.") (footnote omitted). To the extent that Smith argues otherwise, such a contention is legally unfounded and unsupported by the statutory language. Taking the factual allegations of the Complaint as true, the allotments of which Smith complains are non-binding on him under § 11109(b). They are not, however, rendered "unauthorized or unlawful" by § 10315(c) because that section does not apply. To the extent that Smith alleges otherwise in his Complaint, the Motions to Dismiss are due to be **granted**. Plaintiff cannot pursue claims predicated on his wage allotment being "unlawful" under § 10315(c), and any such claims fail to state a viable claim for relief as a matter of law.

[13] Given this expansive definition, Odyssea's insistence that Smith's pleading is deficient because he "has made no allegation whatsoever as to the type of vessel" on which he served or "his role on the particular vessel" is difficult to fathom. (Doc. 14, at 6.) By the terms of § 10101(3), such considerations matter not one whit for "seaman" status. Besides, as for Odyssea's argument that Smith failed to identify whether he was an independent contractor or an employee, a fair reading of the Complaint reveals otherwise (even assuming that such status matters for § 10101(3) purposes).

Court readily concludes that Smith has pleaded sufficient facts to support a reasonable inference that he falls within the ambit of § 11109. No further, more detailed pleading is required. *See, e.g., Speaker*, 623 F.3d at 1380 (confirming longstanding rule that "a complaint does not need detailed factual allegations" to satisfy Rule 8 pleading requirements, even in the wake of *Twombly* / *Iqbal*) (citation omitted).

Second, Odyssea advances the peculiar argument that Smith's "voluntary decision to have his paychecks sent to Seaport will not suffice to support an allegation that Odyssea violated section 11109 when it complied with Smith's written request." (Doc. 14, at 7.) Section 11109 itself draws no distinction between voluntary and involuntary assignments. Indeed, the sole authority identified by Odyssea for the proposition that § 11109(b) is confined to *involuntary* assignments of wages is *In re Williams*, 20 B.R. 154 (Bankr. E.D. Ark. 1982). The *Williams* opinion includes a cursory remark that a predecessor statute to § 11109 was "designed to prevent involuntary court ordered garnishments and attachments and not the prevention of voluntary deductions." *Id.* at 154. *Williams* cites no authority and offers no rationale for this determination, which appears never to have been adopted by any court anywhere. As this Court recently explained, "even if *Williams* has any persuasive capacity in the context of Section 11109(a), it has none under Section 11109(b). By its terms, *Williams* is limited to the former context, and … it appears likely that a voluntary-involuntary distinction would make no sense under Section 11109(b)." *Jurich*, 2012 WL 5400046, at *2. Fundamentally, the Court does not perceive – and Odyssea does not explain – how a voluntary/involuntary dichotomy would be workable for a statute providing that "[a]n assignment … of wages … made before the payment of wages does not bind the party making it." 46 U.S.C. § 11109(b). How would a seaman make an involuntary assignment of wages before they are paid? Odyssea does not explain, but would apparently have this Court inject such an "involuntary" modifier into the text of § 11109(b) in a manner that "might well read the provision out of practical existence." *Jurich*, 2012 WL 5400046, at *2. This the Court will not do, particularly where Odyssea offers nothing but adherence to *Williams* (which did not explain its reasoning, did not relate to § 11109(b), and appears never to have been followed by any court in 30+ years) as a basis for same.

***D. RICO Claim (Count VII).***

In Count VII of the Complaint, Smith claims that both defendants violated RICO because they were in a fiduciary relationship with Smith and they conspired together to defraud Smith to

make unauthorized and unlawful allotments (*i.e.*, to have him enter into the Paycheck Mailing Agreement) and to take such unauthorized and unlawful allotments from his wages. According to the Complaint, Seaport and Odyssea engaged in a pattern of racketeering activity "by misleading [Smith] and committing frauds upon confidence bestowed by concealing the unauthorized and unlawful nature of allotments resulting from the unauthorized allotment notes." (Doc. 1, ¶ 46.) Importantly, Smith alleges in his pleading that "[b]y reason of the violations of 18 USC §1962(c) committed by Seaport Marine and [Odyssea], [Smith was] injured in the amount of the allotments, retained by Seaport Marine within the meaning of 18 USC §1964(c)." (*Id.,* ¶ 56.)

To maintain a cognizable civil RICO claim under federal law, Smith must satisfy 18 U.S.C. § 1964(c), which requires him to show an injury to business or property that occurred "by reason of the substantive RICO violation." *Williams v. Mohawk Industries, Inc.*, 465 F.3d 1277, 1283 (11th Cir. 2006). The "by reason of" requirement "implicates two concepts: (1) a sufficiently direct injury so that a plaintiff has standing to sue; and (2) proximate cause." *Id.* at 1287. As to proximate cause, the law is clear that "in RICO cases there must be 'some direct relation' between the injury alleged and the injurious conduct." *Id.* at 1288. Odyssea's Rule 12(b)(6) Motion challenges whether the Complaint satisfies the "by reason of" prerequisite for a viable RICO cause of action.

This objection has merit. The Eleventh Circuit has explained that "courts should scrutinize proximate causation at the pleading stage and carefully evaluate whether the injury pled was proximately caused by the claimed RICO violations," focusing on "whether the alleged violation led directly to the plaintiff's injuries." *Williams*, 465 F.3d at 1287. Smith's RICO claim, as pleaded, does not satisfy this "by reason of" requirement. As an initial matter, the Complaint's blanket, conclusory statement that "[b]y reason of the violations of 18 USC §1962(c) … [Smith was] injured in the amount of the allotments, retained by Seaport" (doc. 1, ¶ 56), is not sufficient to discharge plaintiff's pleading burden. *See, e.g., Chandler v. Secretary of Florida Dep't of Transp.*, 695 F.3d 1194, 1199 (11th Cir. 2012) ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions") (citing *Iqbal*, 556 U.S. at 678).

As pleaded in the Complaint, the substantive RICO violation here was that Seaport and Odyssea schemed and plotted to defraud Smith, with the grand deception being that they did not

tell him the Paycheck Mailing Agreement he executed was non-binding under applicable law.[14] The injury of which Smith complains in his RICO claim is that allotments were taken from his wages pursuant to the Paycheck Mailing Agreement, and were used to pay Seaport the recruiting fees that Smith had voluntarily incurred in connection with Seaport's placement services. The appropriate "by reason of" inquiry for Rule 12(b)(6) purposes, then, is whether the Complaint adequately pleads that the substantive RICO violation (*i.e.*, failure to disclose the non-binding nature of the Paycheck Mailing Agreement) led directly to the RICO injury (*i.e.*, loss of the allotments to Seaport). Facts alleged in the Complaint support no such direct causal relationship. For example, the Complaint does not specify what Smith would have done had he known the Paycheck Mailing Agreement (which he signed voluntarily) to be non-binding on him pursuant to § 11109(b). If he had refused to honor such Agreement, then presumably Seaport would have either (i) canceled the placement, in which case Smith would not have gotten a job with Odyssea and would have received no wages at all; or (ii) made arrangements to collect payment from Smith via other means, in which case Smith would still have been out the placement fees and so on that he owed Seaport. The direct relationship between the alleged fraudulent scheme and the alleged loss simply is not adequately pleaded in the Complaint to withstand "by reason of" scrutiny on a Rule 12(b)(6) Motion.[15]

---

[14] To be sure, plaintiff couches the violation in terms that the Paycheck Mailing Agreement provided for allotments that were "unauthorized and unlawful." As this Order explains, *supra*, however, the only applicable statute cited by Smith's Complaint is § 11109(b), not § 10315. Section 11109(b) provides merely that an assignment such as that contained in the Paycheck Mailing Agreement "does not bind the party making it." The statute does not declare such an assignment (or any allotment flowing from such an assignment) to be "unauthorized and unlawful." To the extent that Smith hinges the ostensibly "unauthorized and unlawful" character of the allotment on § 10315(c), that theory fails as a matter of law because § 10315(c) is inapplicable.

[15] Smith endeavors to hedge his bets in the Complaint by suggesting that the RICO fraudulent scheme also consisted of Seaport and Odyssea conspiring not to inform Smith that Seaport had a "conflict of interest whereby it served as agent" to both Smith and Odyssea. (Doc. 1, ¶ 46.) Even assuming the Complaint has pleaded sufficient facts from which such a dual-agency relationship could be found, the same "by reason of" problem exists with that theory. Smith does not allege how the nondisclosure of the Seaport/Odyssea relationship injured him, or what he would have done differently had he been aware of that relationship. (To the contrary, in briefing the Rule 12(b)(6) Motion, Smith admits that he believed all along there was such an agency relationship between Seaport and Odyssea (doc. 22, at 9), fairly raising the question of (Continued)

For these reasons, the Court concludes that the RICO cause of action, as presently pleaded, fails to state a claim on which relief can be granted against either Seaport or Odyssea. Accordingly, the Motions to Dismiss are **granted** with respect to Count VII.

***E. Claims Against Odyssea Predicated on Principal/Agent Relationship.***

Odyssea also seeks dismissal of the Complaint "[t]o the extent Smith's claims are predicated upon an alleged agency relationship between Odyssea, as principal, and Seaport as actual and/or apparent agent." (Doc. 14, at 12.) In all candor, it is unclear from the Complaint which (if any) of Smith's claims against Odyssea rely on such an agency relationship, and the extent of such reliance. To be sure, the Complaint repeatedly mentions the existence of an agency relationship between the two entities; however, it is not apparent that any of Smith's claims against Odyssea rest exclusively on such alleged principal/agent status. Certainly, Odyssea does not argue that any particular counts of the Complaint must be dismissed in their entirety for failure to plead agency with sufficient specificity to satisfy *Twombly* / *Iqbal*.

For his part, plaintiff admits that "the pleadings do not so specifically allege" facts showing that the elements of apparent agency under general maritime law are satisfied. (Doc. 22, at 9.) To remedy that deficiency, "Plaintiff requests a reasonable time to amend the complaint, if necessary." (*Id.* at 9-10.) The parties appearing to be in agreement that agency has not been satisfactorily pleaded in the Complaint, the Court will **grant** Odyssea's Rule 12(b)(6) Motion insofar as any of Smith's claims are predicated on such an agency relationship. As for plaintiff's request to amend the Complaint, he may file an appropriate motion, provided that (i) the motion comports with Rule 15, Fed.R.Civ.P.; (ii) a proposed amended pleading is appended

---

what exactly Smith says should have been disclosed but was not.) There is no allegation, for instance, that such nondisclosure duped him into entering an employment relationship with Odyssea that he otherwise would have rejected. As long as Smith voluntarily accepted Seaport's placement with Odyssea, he was responsible for paying Seaport its placement fee and other sums for the services that Seaport provided him. So even if Smith would have declined to sign the Paycheck Mailing Agreement had he known the truth, the allotments still would presumably have been charged to him by Seaport (albeit collected by other means). Nothing in that scenario suggests that Smith would not have been injured had the dual-agency relationship been disclosed. Simply put, the Complaint includes no facts that reasonably support the existence of a direct relationship between RICO violation and the claimed injury, leaving the Court and defendants to speculate as to causation. Such speculation is not permissible under a *Twombly* / *Iqbal* analysis.

to the motion; and (iii) the motion is filed in a timely manner, with due regard to applicable scheduling order deadlines. Of course, the Court expresses no advisory opinion as to the ultimate fate of any such motion that plaintiff might file.

***F. Breach of Fiduciary Duty Claim Against Seaport (Count VI).***

In Count VI of the Complaint, Smith brought a claim against Seaport for breach of fiduciary duty. That claim alleged that the Special Power of Attorney (under which Smith assented to make Seaport his attorney-in-fact to deposit his payroll checks into its bank account for allotment, collection and repayment, before forwarding the balance to Smith) "gives rise to a fiduciary duty between [Smith] and Seaport Marine." (Doc. 1, ¶ 35.) According to the Complaint, Seaport breached this fiduciary duty by using that Special Power of Attorney "to accomplish unauthorized and unlawful allotments;" by engaging in "fraudulent concealment and/or non-disclosure to [Smith] of the unauthorized and unlawful nature of the unauthorized allotment note [and] [Smith]'s statutory rights;" and by not disclosing its "conflict of interest in serving two principals – Plaintiffs and the employers." (Doc. 1, ¶ 37.)

In its principal brief, Seaport articulates two (and only two) arguments against Smith's claim for breach of fiduciary duty. First, it maintains that the "ward of the court" doctrine does not apply "to an arm's length transaction between a seaman and an employment service that helps the seaman find work aboard a vessel owned by the employer." (Doc. 11-1, at 7-8.) But nothing in Count VI would appear to predicate liability against Seaport on a "ward of the court" principle. Rather, by its express terms, Count VI is focused on an alleged fiduciary duty created by the Special Power of Attorney contract between Seaport and Smith. Seaport offers no explanation why the "ward of the court" doctrine has any bearing on alleged fiduciary duties accruing to it from the Special Power of Attorney. Accordingly, Count VI as pleaded would remain in play, regardless of whether Seaport is correct or incorrect about the applicability of "ward of the court" notions to a non-employer. Rule 12(b)(6) relief is not warranted on this basis.

Second, Seaport maintains in conclusory fashion that "Plaintiff has asserted no basis for any assumption that he should not be presumed to know the law" and has not "alleged any sufficient basis for his assertion that Seaport owed a duty to inform him of the applicability of" § 11109. (Doc. 11-1, at 8.) But the Complaint on its face sets forth the basis for Smith's contention that Seaport owed a fiduciary duty to him to disclose (and not conceal) "the

unauthorized and unlawful nature of the unauthorized allotment note [and] [Smith]'s statutory rights." (Doc. 1, ¶ 37.) If Seaport deems that legal basis to be insufficient, then it is incumbent on Seaport (as Rule 12(b)(6) movant) to explain why. The Court cannot and will not accept movant's conclusory assertion of insufficiency. Neither will it endorse Seaport's attempt to shift the burden on its Rule 12(b)(6) Motion to require Smith to prove that Count VI does state a claim, rather than requiring Seaport to establish that it does not.

Seaport's Motion to Dismiss is **denied** with respect to Count VI.[16]

**III. Conclusion.**

For all of the foregoing reasons, it is **ordered** as follows:

1. Plaintiff's Motion for Leave to File First Amended Complaint (doc. 21) is **denied**, without prejudice to plaintiff's ability to file a properly supported, sufficiently specific Rule 15(a)(2) motion prior to the applicable scheduling order deadline;
2. Plaintiff's Motion for Leave to File Supplemental Brief (doc. 25) is **denied**;
3. Seaport Marine, Inc.'s Motion to Dismiss (doc. 11) and Odyssea Marine Inc.'s Motion to Dismiss (doc. 14) are **granted in part, and denied in part**;
4. Plaintiff's claims for violation of RICO (Count VII) and any claims against Odyssea insofar as they hinge on the existence of an agency relationship between Odyssea and Seaport are **dismissed without prejudice**;
5. Insofar as plaintiff's claims proceed from a theory that the allotments were unlawful under 46 U.S.C. § 10315(c), those claims are **dismissed with prejudice**

[16] In its reply brief, Seaport proffers a brand-new argument that "The Limited Power of Attorney does not create a fiduciary duty." (Doc. 23, at 5-7.) The reply is not an appropriate occasion to inject a new argument or theory into the Rule 12(b)(6) calculus. *See, e.g., Jurich*, 2012 WL 5400046, at *3 ("District courts, including this one, ordinarily do not consider arguments raised for the first time on reply"); *Apex/FCC, LLC v. FlexiCrew Staffing, Inc.*, 2012 WL 5398803, *4 (S.D. Ala. Nov. 1, 2012) ("as a new argument raised for the first time in a reply brief, it is improper"); *Essex Ins. Co. v. Foley*, 827 F. Supp.2d 1326, 1330 (S.D. Ala. 2011) ("Essex's election not to advance in its principal brief readily available [legal] arguments … precludes it from propounding those contentions in its Reply."). As noted *supra*, the Complaint is clear that Smith contends the fiduciary duty undergirding Count VI arises from the Special Power of Attorney he signed. If Seaport maintains it is entitled to Rule 12(b)(6) relief because the Special Power of Attorney does not give rise to such a fiduciary duty, then it could and should have presented that argument in its principal brief. Having forgone that opportunity, Seaport cannot properly articulate this argument for the first time in a reply.

because § 10315(c) does not apply to this case as a matter of law and the lawful/unlawful provision (or "penalty provision") of same has not been incorporated into 46 U.S.C. § 11109(b); and

6. Defendants must file answers to the Complaint on or before **February 8, 2013**.

DONE and ORDERED this 28th day of January, 2013.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE